The court now calls the agenda number 11-116311 BAC Home Loans Servicing, LP v. Kim E. Mitchell. Are you ready to proceed? You may proceed. May it please the court, counsel. My name is Dan Velker. I represent the defendant appellant, in this case, Kim Mitchell. In this case, Bank of America, the plaintiff, was successful in obtaining both a default judgment and an order confirming foreclosure and a confirmation of sale against Ms. Mitchell and her home, essentially, without ever serving her with the process in this case. I think that issue is undisputed. The issue in this case is whether or not Ms. Mitchell, through her motion practice, waived service. If she didn't waive service, then I would suggest the court should reverse the court's decision and grant her request for relief. If, in fact, the court finds that she did waive her right to contest personal jurisdiction through her motion practice, then I would ask the court to find, to reaffirm this decision and reinstate a verdunga that, in fact, that waiver only amounts to a waiver prospectively and does not amount to a waiver retroactively. Let me go into just some brief details regarding the motion practice, which I think the court will find helpful in evaluating this case. Originally, Bank of America obtained a file lawsuit in 2009 against Ms. Mitchell, who lives in the South Side of Chicago, obtained a default judgment in 2010 against her, and then obtained an order of foreclosure and sale, confirmation of sale, and distribution of proceeds in 2011. Shortly thereafter, Ms. Mitchell filed a general appearance in the circuit court, as well as a motion to vacate the order confirming the judgment of foreclosure and sale and distribution of the proceeds of the sale, on the singular grounds that she had never been served with process in this case. Bank of America contended they had served her daughter at her home. As it turned out, Ms. Mitchell has no daughter and only has a son. So I believe it's uncontested that there never was any actual service of process on Ms. Mitchell. Ms. Mitchell's first motion, again, was a motion to vacate the order of foreclosure and sale, and it was brought singularly on the fact that she had not been served with process, and it was supported by affidavit. It was not brought pursuant to any particular section of the only codicil procedure, and as a result, the court essentially directed the counsel for Ms. Mitchell to withdraw the motion and refile it under the Mortgage Foreclosure Act, under 15-1505, which the court claimed was the exclusive mechanism to move to vacate service in a foreclosure case. Subsequently, a new motion was brought after the initial motion was withdrawn, again, moving to vacate the order of foreclosure of sale, confirmation of sale, again, raising the singular argument that she had not been served with process. Unfortunately, that motion lacked exhibits. The court struck the motion, and the motion was refiled with the appropriate exhibits, again, raising the singular argument that she had not been served with process, and that she had a marriage. What was the nature of that motion? Was that entitled 214-01? That's correct, Your Honor. I think it was 214-01, and it was brought under 15-1505. In your petition for leave to appeal, though, it seems that the only argument you're making is that the appellate court erred in ruling that the petitioners submitted to jurisdiction prospectively and retroactively, and relying on in remarriage if redundant. Right. That's correct, Your Honor. So is it really before us whether she was served with process or not? Well, I think it's important to understand the procedural history of the motion practice. The point is that she never, ever did anything but contest the court's jurisdiction over her. In a collateral case? In a post-judgment process, Your Honor. Right. The former was closed. Well, it wasn't closed, but it was in the same case number, but it was a post-judgment motion under 214-01 because the judgment had been entered in the case. Okay. Example judgment. And more than 30 days had passed, as I recall. The court ultimately found that by filing, that she had filed a general appearance, she had waived jurisdiction because she withdrew her original motion on, I think it was October of 2011. And again, she withdrew that motion because the court insisted it had to be brought under 15-1505, which was then subsequently done along with 2-1401. Is that in the record, the trial court's direction? It's in the order that it's withdrawn. I don't know that that's, that's not in the record, I do not believe, Your Honor. But in any event, the issue on appeal, obviously, is whether or not in re-verdung is still the law of this, of this court. I suggest that it is. The circuit court in this case, as I mentioned, denied the motion to vacate, citing the fact that the motion should have been brought pursuant to 213-01. Not that it wasn't in substantial compliance, not 213-01, 2-301. The court didn't find it was not as a... Counsel, let's just talk about verdung for a minute. Doesn't that need to be re-examined in light of 2-301 and 15-1505.6? I don't think, we don't think it does, Your Honor. You don't think that those two amendments have removed the prospective limitation on a court's jurisdiction? No, I don't, Your Honor, because I believe that... Why not? Well, I think for due process reasons, I think when you enter a case and enter an appearance in a case, and that appearance is timely. In other words, Ms. Mitchell's appearance was timely because she hadn't been served yet. So, by filing a timely appearance in a case, it would be a violation of due process, I think, and that's why verdung exists. For somebody to have, to be stuck, essentially, with all the orders that have been entered in a case before she had even been served. An example, you might enter a tort case when you're finally served and find out there's been a dozen orders entered that have a direct effect on your case. Sanctions could have been entered against you. Judgment could have been entered against you. You've timely filed your appearance in the case. I think as a matter of due process, you should not be bound by orders that were entered when you didn't have any requirement to be part of the litigation. Can due process rights be forfeited? I don't think they can, Your Honor. Not under these circumstances. Not when you've not done anything wrong. I think the key is whether you forfeited anything. I think when you file an appearance timely in a case, I think it would be a violation of due process for those rights to be forfeited since you've done nothing wrong. Ms. Mitchell, in this case, did nothing wrong. And In Re Verdung, obviously, stands for the proposition that even when your personal jurisdiction is waived and you forfeit it, it still only applies prospectively and does not apply retroactively. 2-301, the statute, obviously, was amended to eliminate special and limited or special in general appearance distinctions, and it eliminates some language as well. But there's nothing I have seen that there's no intent expressed and that no changes to that language that would suggest that the legislature essentially intended to take due process rights or forfeit due process rights of a litigant who's timely filed an appearance in litigation. Is there any intent in the legislature, a legislation that the 2-301A5 applies both prospectively and retroactively? Is there anything in the legislation about that? I don't think it addresses it either way, Your Honor. From my read of it, it doesn't address it either way. And I think the real intent of the amendment was simply to eliminate kind of the age-old distinction of special limited appearances under the new 2-301, essentially, you're allowed to contest jurisdiction as long as you make that by way of your first motion. Other than a motion to extend time to the answer otherwise. Please, make that motion before you take any other substantive step in the case, then you're protected. And again, in this case, Ms. Mitchell, every motion she made in this case was expressly and explicitly a motion to vacate the order on the singular ground that she had not been served with process. So I personally can't imagine how she forfeited anything. I mean, there was some inartfulness in the motion practice, admittedly. What about the practicalities, counsel, kind of dovetailing off of Justice Freeman's question about some consequences. Here it took almost three years from the time of the defendant's default until the order approving the foreclosure report of sale and distribution. And the order for possession indeed, three years. If we find that a party who finally appears and submits itself to the jurisdiction of the court is bound by the prior orders of the court, obviously we're not restarting the meter for what potentially could be another three years, right? So there's the opposite side of that coin. Do you want to comment on that? Well, I understand what you're saying, but I don't think it's three years in all due respect. I think it was 2009 the complaint was filed. I think the default order was entered in 2010, and I think the order confirming the sale, etc., was entered in 2011. I think the amount of time that passes, quite frankly, is irrelevant. I mean, the service of process is mandatory. There are no exceptions. And Bank of America isn't even contending, as far as I know, that Ms. Mitchell was actually served. The fact of the matter is they did not serve her. And until she's served, she simply has no obligation to come to court. And I think it's incumbent upon the plaintiff in cases to make sure they get good service. And in this case, they clearly did not get good service. But if she made a general appearance in court, she waived services, didn't she? She would if she did not. But in this case, Your Honor, she simultaneously filed a motion to vacate on the singular grounds that the court lacked jurisdiction over her person, because to her knowledge, she said she had not been served with process. So she indicated her intention to fight the issue of jurisdiction from the earliest possible moment that she could do it. Admittedly, she withdrew the motion. And then she filed a motion to quash the order for possession and the deed, right? Right. And then the circuit court found that because she had brought that initial motion and withdrawn it, that she had waived her right to contest personal jurisdiction. I would contend that she never took any other step other than a move to contest personal jurisdiction, withdrawn or not. She still, her next motion under 2-301 was nevertheless a motion to vacate on the grounds of personal jurisdiction. The court seemed to be caught up in semantics, quite frankly, on whether or not the motion was an attack on the judgment or it was an attack on process or a motion to quash the process. And that a motion to dismiss was not brought. Now, quite frankly, Ms. Mitchell could not have brought a motion to dismiss, in my mind, because she was not the sole defendant. So she couldn't have moved to dismiss the case. There was another defendant in the case as well as her. So her only recourse procedurally would have been to be able to do one of two things, a motion to vacate the order on the grounds of lack of service or a motion to vacate or quash service, both of which would achieve the same result. So I think to some extent, the court, the circuit court, and maybe perhaps the appellate court as well, got caught up in the semantics. But the first district appellate court in this case found essentially that your decision at Henry v. Verdun is no longer good law. Without saying that, they simply said that when you decided Henry v. Verdun, you didn't have the benefit of considering the amendments to 2-301 with very little analysis. And the first district court relied upon a second district decision, claiming that it was a Marzano decision, claiming it was a decision as I read it in the first district when it was not. This issue is clearly an issue that needs to be addressed, obviously regardless of how you come out, because there is clearly a split in the circuit, a split in the courts, the appellate courts throughout the state. The first district has conflicting decisions on this issue, which we've said in our brief. Second district comes out as having essentially taken the position that Henry v. Verdun has been overruled. Well, it's no longer good law, I should say. I think, and then the third and the fifth district come out differently as well. So this is really something, obviously, it needs to, and I'm sure that's why you granted the petition, but it's something that certainly needs to be dealt with. But as far as we're concerned, your honors, we believe that Henry v. Verdun is still good law. It was good law at the time it was made, and it was made for the purpose of preserving somebody's due process rights, at least until the time that they have an obligation to timely file an appearance. Until that date comes, it would seem to me unconstitutional, a violation of due process, to have somebody forced to live with orders that were entered in a case in which she had no chance to contest. Thank you. Good morning, your honors, counsel. My name is Amy Bryan, and with me today is Ashley Nall. We represent the Eppley Bank of America. Justice Garmon, I would like to first suggest your question about the issue before the court. Counsel said that the issue is whether or not Ms. Mitchell waived the court's impersonum jurisdiction. And I think a clear review of their petition to relieve the appeal and also the appellant's brief indicate that that issue's not before the court today. That the issue is simply the proper interpretation of what is a very clear language in the statute, section 2301A and subsection A5. To the extent your honors wish for me to address the issue, whether or not she waived jurisdiction, I'm happy to do so. But today, I would like to focus on appellant's argument with respect to Verdung. Justice Thomas, you asked whether or not Verdung needs to be revisited in light of the amendment to section 2301, and I would argue that it certainly does. Verdung was decided almost 25 years ago by this court. And at that time, section 2301 was markedly different from its current form. As counsel pointed out, at that time provided that when a party wanted to appear and object to the court's impersonum jurisdiction, it needed to file what was called special or limited appearance. The statute also provided that any pre-judgment appearance other than a special appearance would be considered a general appearance. The statute was silent as the judge, or excuse me, as the appearances entered post-judgment. And so courts were left with some gray area, and the definition of a general appearance, especially a post-judgment general appearance, was left up to determination on a case-by-case basis. And so there evolved some ambiguity in the language of the statute, which created a potential pitfall for a litigant who wanted to appear and contest the court's impersonum jurisdiction. In 1999, the General Assembly addressed this issue head-on by amending the language in section 2301. It did so in two key ways. First, it totally eliminated the special general appearance distinction and any temporal restriction in that language, including the prior to judgment language. It also added a subsection A5, which provided that if a party filed any pleading or other than a motion for extension of time to answer or otherwise appear, that party waived all objections over the court's jurisdiction over her person. Now, counsel said that really the amendment only eliminated the timing issue in the special general appearance distinction. Well, counsel completely ignores this subsection A5. What the legislature did was try to, in Senator Hawkinson's words, clean up what had been some sort of gray area and what had created potential pitfalls for litigants. And they did that by eliminating this special general appearance distinction and telling parties, if you want to appear before a court and preserve your due process rights, object to the court's personal jurisdiction, you need to file a motion to dismiss or a motion to quash service of process. And if you do not do so, in subsection A5 they say, you're going to waive all objections to the court's jurisdiction. The legislature was very clear as to what a party needed to do to preserve their objections in persona of jurisdiction, and they were very clear in the repercussions a party would face would they not follow that procedure. So are you ultimately arguing that the fact that this was entitled a motion to vacate dooms the argument, that because of the title, because obviously the substance raised these very same issues? Well, I wouldn't – I would say that that issue is not before the Court today. You know, in fact, the only issue is whether or not when Ms. Mitchell waived personal jurisdiction, she did so both prospectively and retroactively. So we shouldn't comment on the fact that she raised the failure to serve her over and over and over again except the title of her motions were not correct? I would argue no. And if I may point out some clarifying points, yes, the motions did raise the fact that she was not served or allegedly not served with process, but in the prayer for relief, they did not ask that service be quashed, and she filed four post-judgment motions, not one of those motions mentioned in the prayer for relief that she wanted service of process quashed. There are two tenets of legislative interpretation that necessarily lead to this conclusion that when the legislature amended Section 2301, it intended waiver to operate both prospectively and retroactively. The first is that the best indication of legislative intent is the expressed language of the statute, given its plain and ordinary meaning. The second is that where a legislature amends a statute striking words, it is to be concluded that it deliberately intended to change the law. Here, the current Section 2301a and a5 are clear on their face. They're unambiguous. And so we really need to look no further than the four corners of the statute. Where does the legislation indicate that, that it's prospective and retroactive? It indicates it in the language of subsection a5, where it says that if the objecting party files a response of pleading or motion other than a motion for an extension of time to answer or otherwise appear prior to the filing of a motion in compliance with subsection a, that party waives all objections to the court's jurisdiction over the party's person. So the plain and natural meaning of that phrase, the party waives all objections, is that waiver applies comprehensively, both prospectively and retroactively. I would posit that because Verdung did not consider this new language, in fact, could not have because it was decided so far before the statute was amended, that it needs to be revisited. And counsel argues that there was, you can find no legislative intent. That waiver was to apply both prospectively and retroactively. Again, I say we need to look no further than the clear language of the statute. Are there any due process concerns with regard to that, if we find that it applies retroactively and prospectively? I think that the due process concerns are sufficiently protected in the current Section 2301. In that they provide litigants with a clear road map as to what they need to do in order to appear before a court and object to the court's jurisdiction. By amending this statute, by cleaning it up, the legislature really made a more narrow waiver provision. It said, if you want to contest a jurisdiction, you need to file a motion to dismiss the entire proceeding or a motion to quash service of process. And you need to do that before you file any other motion or pleading other than a motion for extension of time to answer or otherwise appear. It still gives litigants the opportunity to raise those objections. They still get their day in court. But it also recognizes an interest in finality and an interest that the court has in hearing objections to jurisdiction early on in the litigation by saying, if you do not raise these objections in a very clear way that we say you must, you waive all objections to the court's jurisdiction. And that's what happened here. The appellate court here held that Ms. Mitchell waived all objections to the court's jurisdiction, including any objections she might have, excuse me, including any objections she might have to the default judgment, which is entered prior to her appearing and filing these four post-judgment motions. So despite the clear language in section 2301, since the amendment, there has been some disagreement among Illinois courts, as counsel points out, as to whether waiver confers personal jurisdiction retroactively. This appellate court did adopt the position in Marzano, a second district court opinion, as counsel points out. But it also affirmed its decision in Flores from 2012, which holds that a natural reading of this language in section 2301A5 necessarily means that waiver is comprehensive, it's all or nothing. And when a party waives objections to the court's personal jurisdiction, it does so prospectively and retroactively. Appellant would instead have this court adhere to Verdung, which, as I've stated, is a pre-amendment case. And because of the amendment to section 2301, Verdung is no longer controlling on the proper interpretation of this section of the code. And appellant also cites to DBL Distribution and Johnson, both of which rely heavily on Verdung in their conclusion that waiver should only operate prospectively. In fact, the appellate court in this case did consider the Johnson opinion, and it rejected it because it relied on Verdung. And they rejected Johnson's opinion rightfully so. Johnson relied a lot on Verdung, which is outdated. And it also came to the erroneous conclusion that section 2301 has never been applied in a post-judgment proceeding to give a trial court retroactive jurisdiction or to validate orders entered without jurisdiction. That's simply not true. As the opinion of Marzano points out, both the old section 2301 and the current section 2301 have been applied retroactively post-judgment. And that's in the Lord and Bertley decisions, respectively. Marzano, the second district court opinion, provides a lengthy, thoughtful analysis of section 2301 as amended. The opinion runs through the statutory interpretation analysis and history of the common law on the issue, and concludes that waiver is both prospective and retroactive. The Johnson opinion, on the other hand, which appellant would have this court follow, does not analyze the text of section 2301. In fact, it barely dedicates a paragraph to discussion of the amended statute. As I stated, the appellate court here considered and rejected the Johnson opinion. And because it relied on Verdung, noting that, and I quote, we've recently noted that Verdung did not consider the new text of section 2301A and A5, which was amended in 2000. As I stated earlier on, this court needs to look no further than the express language of the statute as amended in 2000. The amendment eliminated any temporal restriction on the waiver. It eliminated general special appearance distinction, and it added this new subsection A5, which provides for a comprehensive waiver in instances such as these, where a party appears and files something other than a motion to dismiss, a motion to quash service of process, or a motion for an extension of time to answer or otherwise appear. This court should not be reading in any exceptions or limitations to the statutory language that's not provided by the legislature. And in fact, should affirm what is already clear language in the statute to provide clarification for the courts below and parties that when you fail to follow the procedure set forth in subsection A, you waive all objections to the court's jurisdiction over your person pursuant to subsection A5. Unless this court has any other questions? Counsel, in the very first motion that was filed, what was the relief requested? If I may, I can refer to the record, but I believe it was to vacate the order approving foreclosure report of sale and distribution for an order for possession indeed. And indeed, that was filed less than 30 days after the order was entered. Do your honors have any more questions? I'm happy to answer them. I don't believe so. Otherwise, we ask that you affirm the appellate court's holding that when Ms. Mitchell filed a motion other than a motion to dismiss or to quash service of process, she waived all objections, prospectively and retroactively, the court's jurisdiction. And affirm what is already clear language in section 2301A and A5. Thank you. I'll do a few brief comments. This court, I presume, could take judicial notice of the fact that litigants throughout the state file appearances in litigation matters from time to time when they've never been served with process. They do that because they've learned of the existence of litigation, they know that their name is a party, and they wish to participate in the case and protect their rights. If the court were to accept the interpretation of 2-301 that Bank of America sets forth, essentially any litigant that did that, made that decision to do that, without forming a comprehensive study of every order that entered in that case. And whether any order that entered in that case had any effect on them, directly or indirectly, would essentially be submitting to all of those retroactive decisions made by the court long before that party filed their appearance or had any timely obligation to file their appearance. So if judges have been entered against this party that filed an appearance for whatever reason, they would be bound by that judgment. We wouldn't be able to contest that judgment. So I suggest to you that the Bank of America's read of 2301 is extremely broad. And it really should not be accepted by this court because it is a real trap for the unwary, to say the least. The second district case that the counsel referred to, the Marzano case, focused on the fact, of course, that Verdung didn't have the benefit of the Amendment 2-301. But Marzano also looked to a first district case, a Johnson case, which we cite in our brief, and took the position that Johnson also looked to Verdung and didn't do an analysis of 2-301. But in fact, the Johnson decision, which is a decision in the first district that conflicts with this decision, actually said at page 912, there is no authority to, this decision was decided in 2008. The amendments to 2-301 were added in 2000. So eight years later, the Johnson court in 2008 said there is no authority to support the argument advanced by plaintiffs, that defendants filing retroactively validated the earlier orders entered without jurisdiction. Section 2-301 has never applied in a post-judgment proceeding to give a trial court retroactive jurisdiction or to validate orders entered without jurisdiction, nor is there indication that the legislature intended to achieve this result when it amended section 301. I suggest that is the correct decision in this case. The in re Verdung decision made it very clear that in order to have a valid judgment, that the court must have jurisdiction, as you're all aware, over both the subject matter of the litigation and have jurisdiction over the parties. It went on to say that personal jurisdiction may be acquired either by the parties making a general appearance or by service of process as statutorily directed. A judge rendered by a court which fails to acquire jurisdiction over the parties is void and may be attacked and vacated at any time either directly or collaterally. And I suggest to you that is still the law, it should be the law of this state. That until service is accomplished, and as long as the appearance that's filed is timely, that the litigant should have the ability to bring a motion to challenge jurisdiction, of course. But if the litigant doesn't do that, for whatever reason, the litigant should not be stuck with, bound by, orders of the court that were entered before the timely appearance was filed that affects the litigant. Otherwise, the litigant is stepping into a trap, a real trap for the unwary, in my view. And for those reasons, I would ask this court to affirm your decision in Verdung. Thank you. Mr. Velker? Yes. Please explain to me how the first motion that was filed complies with 2301A. The first motion that was filed raised the singular argument that Ms. Mitchell had not been served with process and supported that proposition with an affidavit. It asked that the order of foreclosure and sale and disposition of the proceeds of the sale be vacated, which is consistent with what Verdung says you can do when there is lack of personal jurisdiction. In fact, that's why I read that clip to you. It says that if a court fails to acquire jurisdiction over the parties, the order is void and may be attacked at any time, directly or indirectly. That's when the court goes on to say that even after your file of general appearance, the court had jurisdiction over the individual, however, a party who admits to the court's jurisdiction or submits to the court's jurisdiction does so only prospectively, and the appearance does not retroactively evaluate orders entered prior to that date. So her initial motion was a motion to vacate the orders that had been entered in the case, which had caused her house, caused her to be in default, and it caused her home to be sold at a sheriff sale. She didn't ask that the service be quashed, but she asked that the orders be vacated on the grounds of lack of service of process. And I submit to you that this is a semantic issue. Whether you move to vacate the orders because you haven't been served, or whether you move to quash service is simply a semantic issue. It has nothing to do with the true intent of what the parties are seeking. Council said that we did not ask in our wherefore clause that the service be quashed. That's correct. But we did ask that the orders that have been entered without jurisdiction that resulted in the foreclosure and the disposition of the proceeds of the home up to that date, through judgment, be vacated. Mr. Volker? Yes. Was she a pro se litigant at that time? She was not. An attorney? Correct. Well, even if we agree with your analysis of the semantical nature of the orders, I mean, the order that you just recited to Justice Kilbride is different with what is required in the amendments. Would you agree to that? I wouldn't, your honor, because under 2-1401, which even the first district appellate court found was the appropriate section to move to vacate. That section allows you to move to vacate the orders that have entered the case without jurisdiction. So there's a great deal of perhaps conflicting statutes. You have 2-1401 that uses certain terminology, 2-301 uses different terminology. 2-1401's a new action, isn't it? I'm sorry, your honor? 2-1401 is a new action, isn't it? It's a post-judgment motion procedure. Right, don't we have case law indicating that's a new action? I don't know the answer to that, your honor. I do not know. I do know this was a post-judgment motion. That's correct. Does the 2-1401 motion itself require service? It does, but the court found that the service was waived on the part of Bank of America, waived service by responding to it. Well, I only bring that up in light of the fact that my question with respect to it being a new action. It may be, your honor. I'm not entirely sure. I apologize. But for those reasons, I'm sorry, your honor. Let me just ask you this follow-up question. What would be the effect of a motion to quash service of process that would have been allowed compared to the motion to vacate that was filed, if that had been allowed? What is the difference in the effect of those two? I don't believe there's any difference whatsoever, because if the court were to find that there was no service, grants the motion to quash, the natural effect would be that the orders would be void. They would be void and the court might enter an order vacating the order. So I don't think there's any difference whatsoever other than semantics. Thank you. Thank you. Counsel. Case number 116311, BAC Home Loan Servicing LP versus Mitchell. Will be taken under advisement as agenda number 11. Counsel, excused. Thanks for your arguments today. And Mr. Marshall, the Supreme Court will stand in recess until 11 a.m.